**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**



SEP **2 9** 2023

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Juaton Adams )
_____ )
_____ )
_____ )       CIVIL ACTION
(Name of the plaintiff or plaintiffs) )
)
v. )       NO. _23-1372_
)
Maui Jim )
_____ )
_____ )
_____ )
(Name of the defendant or defendants) )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  Plaintiff ☐ DOES ☐ DOES NOT demand a jury trial.

### I. PARTIES

2.  The plaintiff is    Juaton Adams                            ,

whose street address is    1421 W Candlelight Ct, Apt 201        ,

(city) Peoria          (state) FL        (ZIP) 61614

(Plaintiff's telephone number)        (309) – 892-0520

3.  The defendant is Maui Jim                                , whose

street address is  1 Aloha LN                                ,

(city) Peoria          (state) IL        (ZIP) 61615

(Defendant's telephone number)        (309) – 589-6031

4.  The alleged discrimination occurred at  1 Aloha LN

(city) Peo          (state) IL        (ZIP) 61615

5. The plaintiff [**check one box**]

   (a) ☐    was denied employment by the defendant.

   (b) ☐    was hired and is still employed by the defendant.

   (c) ☑    was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _Oct_____, (day) _4_____, (year) _2021____.

## II. JURISDICTION

7. Jurisdiction over this claim is based on 28 U.S.C. § 1331.  Plaintiff alleges that the defendant(s) discriminated against Plaintiff because of Plaintiff's:

   ☐ Age (The Age Discrimination in Employment Act, 29 U.S.C. § 621)

   ☐ Color (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Disability (The Americans with Disabilities Act, 42 U.S.C. § 12101 and/or The
                 Rehabilitation Act, 29 U.S.C. § 701)

   ☐ National Origin (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Race (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Race (42 U.S.C. § 1981)

   ☐ Religion  (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Sex/Gender (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Sex/Gender (Equal Pay Act, 29 U.S.C. § 206)

   ☐ Use of Leave (Family and Medical Leave Act, 29 U.S.C. § 2611)

   ☐ Other (list): _____

8. Plaintiff ☑ HAS ☐ HAS NOT filed a charge before the United States Equal Employment Opportunity Commission (EEOC) relating to this claim of employment discrimination. **[Attach a copy of charge to this complaint.]**

9. Plaintiff ☐ HAS ☑ HAS NOT filed a charge before the Illinois Department of Human Rights (IDHR) relating to this claim of employment discrimination. **[Attach a copy of charge to this complaint.]**

10. Plaintiff ☑ HAS ☐ HAS NOT received a Right to Sue Notice.  If yes, Plaintiff's Right to Sue

Notice was received on or about (date) 6-30-2023 .

**[Attach copy of Notice of Right to Sue to this complaint.]**

### III.  FACTS IN SUPPORT OF CLAIM

11. The defendant intentionally discriminated against Plaintiff [*check only those that apply*]:

(a) ☐ by failing to hire the plaintiff.

(b) ☑ by terminating the plaintiff's employment.

(c) ☐ by failing to promote the plaintiff.

(d) ☐ by failing to stop harassment;

(e) ☐ by failing to reasonably accommodate the plaintiff's disabilities.

(f) ☐ by failing to reasonably accommodate the plaintiff's religion.

(g) ☐ by retaliating against the plaintiff because the plaintiff did something to assert
rights protected by the laws;

(h) ☐ by coercing, intimidating, threatening or interfering with the plaintiff's exercise or
enjoyment of rights;

(i) ☐ with respect to the compensation, terms, conditions, or privileges of employment;

(j) ☐ other (specify):  The expectations that I
ned to accomplish were the same as
my co-workers. Some of my co-workers
failed to meet those expectations as I did,
but I was the only one terminated
because of it.

3

12. State here briefly and as clearly as possible the essential facts of your claim. Describe precisely how each defendant in this action is involved. Give dates and places. Concentrate on describing as clearly and simply as possible what employment action or situation you allege to have been illegal and how it violated your rights. It is not necessary to make legal arguments or cite any cases or statutes.

Maui Jim and members of the Human Resource department, along with members of management, Javier Silva, Susan Patterson, and Mary Brenneman all came into agreement to terminate my employment on October 4, 2021. Maui Jim terminated me because I failed to meet the productivity expectations. Other employees I worked beside had'nt met those expectations, had the privilege to keep their job, while I, being a different race, got fired. I'm offended and believe I was narrassed and discriminated against.

13. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐    Direct the defendant to (specify): _____

4

_____

_____

_____

_____

_____

(g) ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑  Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

Juaton Adams
_____
(Plaintiff's name)

_____

1421 W. Candlelight Ct, Apt 201
_____
(Plaintiff's street address)

(City) Peoria          (State) IL     (ZIP) 61614

(Plaintiff's telephone number) (309) – 892-0520

Date: 9-29-2023

5

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New Orleans Field Office**
500 Poydras Street, Suite809
New Orleans, LA 70130
(504) 635-2531
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/30/2023

**To:** Juaton Adams
1421 W Candlelight Ct #201
PEORIA, IL 61614
Charge No: 440-2022-00105

EEOC Representative and email:    VERA SUMPTER
Investigator
vera.sumpter@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2022-00105.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
06/30/2023

Rayford O. Irvin
District Director



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CHARGE OF DISCRIMINATION

For Official Use Only – Charge Number:
**440-2022-00105**

EEOC Form 5A (October 2017)

| | |
|---|---|
| **Personal Information** | First Name: _____ Juaton _____ MI: _____ Last Name: _____ Adams<br>Address: _____ 1421 W Candlelight Ct, Apt 201 _____ Apt.: _____<br>City: ___ Peoria ___ County: ___ Peoria ___ State: Il ___ Zip Code: ___ 61614<br>Phone: ___ 309-273-9190 ___ Home ☐ Work ☐ Cell ☒ Email: ___ Ms.juaton@gmail.com |
| **Who do you think discriminated against you?** | Employer ☒     Union ☐     Employment Agency ☐     Other Organization ☐<br>Organization Name: ___ Maui Jim<br>Address: ___ 1 Aloha Lane _____ Suite: _____<br>City: ___ Peoria ___ State: Il ___ Zip Code: 61615 ___ Phone: ___ 309-691-3700 |
| **Why you think you were discriminated against?** | Race ☒     Color ☐     Religion ☐     Sex ☐     National Origin ☐     Age ☒<br><br>Disability ☐   Genetic Information ☐   Retaliation ☐   Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | **Date of <u>most recent job action</u> you think was discriminatory:** ___ October 4, 2021<br>**Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).**<br><br>The expectations from me were different from the other employees on my team at Maui Jim. It was harder for me to be a successful employee. Because I couldn't meet the expectations, I was termianted. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>**Signature:** _Juaton Adams_  Juaton Adams (Jul 7, 2022 09:08 CDT)     **Date:** 07/07/22 |

# EEOC Received 06/24/2022
## Supplemental Information Sheet

Juaton Adams
Name

Date

| What is your job, previous job, or the job you applied for? | Date Hired: _05/03_/_2021_ Job Title at Hire: _____ Picker |
| | Annual Pay Rate When Hired: _____ Last or Current Annual Pay Rate: _____ |
| | Job Title at Time of Alleged Discrimination: _Picker_ |
| | Date Your Employment Ended: _10/04_/_2021_ Select One: Quit ☐ Discharged/Laid off ☐ |
| | Name and Title of your Immediate Supervisor: _Javier Silva_ |
| | Job Applicants - What was the title of the job you applied for: _Packing_ |
| | Date you applied: __/__/____ Date you found out you were not hired: __/__/____ |

**Was another person in the same or similar situation treated the same, better, or worse than you? EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?**

| Who was treated BETTER than you? | 1. Name: Katie Sandrek                    Job Title: Picker |
| | Email: _____ Check how they are different from you: |
| | Race ☒ Color ☒ Religion ☒ Sex ☐ National Origin ☐ Age ☒ Disability ☐ |
| | How were they treated better? The expectations for me were set different than my co-workers. My managers and supervisors were more ea... going on them. Although many of us had more than one mispick. I was the only one terminated. |
| | Date: __/__/____ |
| | 2. Name: Ashley Bander                    Job Title: _____ |
| | Email: _____ Check how they are different from you: |
| | Race ☒ Color ☒ Religion ☐ Sex ☐ National Origin ☐ Age ☒ Disability ☒ |
| | How were they treated better? The expectations for me were set different than my co-workers. My managers and supervisors were more easier going on them. Although many of us had more than one mispick. I was the only one terminated for it. |
| | Date: __/__/____ |

| Who was treated WORSE than you? | Name: _____ Job Title: _____ |
| | Email: _____ Check how they are different from you: |
| | Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability ☐ |
| | How were they treated worse? _____ |
| | Date: __/__/____ |

| Who was treated the SAME as you? | Name: _____ Job Title: _____ |
| | Email: _____ Check how they are different from you: |
| | Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability ☐ |
| | How were they treated the same? _____ |
| | Date: __/__/____ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

# JacksonLewis

**Jackson Lewis P.C.**
150 North Michigan Avenue, Suite 2500
Chicago IL 60601
(312) 787-4949 Direct
(312) 787-4995 Fax
jacksonlewis.com

MY DIRECT DIAL IS: 312-803-2512
MY EMAIL ADDRESS IS NAdine.Abrahams@JacksonLewis.com

August 5, 2022

**VIA EEOC PORTAL**

U.S. Equal Employment Opportunity Commission
230 S. Dearborn Street
Suite 1866
Chicago, IL 60604

       **Re:**    ***Juaton Adams v. Maui Jim, Inc..***
             **Charge No: 440-2022-00105**

Dear Investigator:

      Respondent Maui Jim Inc., ("Maui Jim" or the "Company") submits this position statement in response to Charging Party Juaton Adams' above-referenced Charge of Discrimination.[1] Adams alleges that Maui Jim discriminated against her because of her race and age,[2] in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, by allegedly subjecting her to different terms of employment than other employees and terminating her employment.

      Adams' allegations are meritless. Maui Jim did not discriminate against Adams in any way. Maui Jim terminated Adams' employment as a Picking and Replenishment Technician

---

[1] In providing this position statement, Maui Jim does not waive any substantive or procedural defenses, all such defenses being specifically reserved. This position statement is not an affidavit or a declaration. Rather, the information contained here is based on the facts as Maui Jim knows them as of this writing, and Maui Jim reserves the right to amend this statement if it discovers additional relevant information. This statement does not purport to be an exhaustive list of Maui Jim's defenses to Adams' Charge, and the Company reserves the right to elaborate on or add to its position, whether later in this agency's investigation or in any later litigation. Maui Jim submits this statement in confidence for agency investigation purposes only and does not consent to the disclosure of this statement or any of its exhibits for any other reason.

[2] Maui Jim's employment records indicate that Adams was born on June 16, 1985 and is therefore under 40 years old. Accordingly, this position statement will not address age allegations as Adams is not in the ADEA's protected class. Nevertheless, Maui Jim denies that any employment decision made relevant to Adams was made based on her age or status in any other protected category.

# JacksonLewis

August 5, 2022
Position Statement
Charge No: 440-2022-00105
Page 2

because she could not meet the Company's performance expectations around quality and quantity during her extended probationary period of employment despite repeated coaching and training sessions.    Moreover, Charging Party has not, and cannot, establish that Maui Jim's nondiscriminatory explanation for her termination was pretextual.    Maui Jim terminated Adams because she could not meet its reasonable and legitimate objective performance expectations, not because of her race or age.    Maui Jim therefore requests that the Commission dismiss Adams' Charge.

## I.    RELEVANT FACTS

### A.    *About Maui Jim*

Founded in 1996, and based in Peoria, Illinois, Maui Jim manufactures and sells polarized sunglasses, lenses, apparel, and related accessories.    Maui Jim by its culture is a family-oriented company that prides itself on a positive, friendly working environment for its employees.

Maui Jim has a strong commitment to equal employment opportunity for all employees and applicants.    Maui Jim's Equal Employment Opportunity Policy (attached as Exhibit A) provides:

> It is the policy of Maui Jim to afford equal employment opportunity to all individuals regardless of race, color, religion, sex, age, national origin, physical or mental handicaps, disability, veteran status, or sexual orientation.

> This basic non-discrimination policy applies to all aspects of employment including but not limited to recruitment, job placement, discipline, layoff, compensation, benefits, and administration of training, education, social and recreational programs.

Maui Jim's Non-Discrimination/Anti-Harassment Policy (attached as Exhibit B) provides in part:

> If an employee believes that they or any other individual is being subjected to illegal discrimination or harassment, this information must promptly be reported to your immediate Supervisor or, if this is not appropriate, to Human Resources.    All complaints will be investigated promptly.    Any employee who is found to have engaged in illegal discrimination or harassment will be subject to appropriate discipline, depending on the circumstances, up to and including termination of employment. Maui Jim will not retaliate against any employee who in good faith makes a complaint of illegal discrimination or harassment.

# JacksonLewis

August 5, 2022
Position Statement
Charge No: 440-2022-00105
Page 3

B.   *Adams' Employment with Maui Jim*

Maui Jim hired Adams as a Picking and Replenishment Technician at its Peoria distribution center beginning on May 3, 2021. As a Picking and Replenishment Technician, Adams' duties included picking customer orders from supply storage, replenishing stocks from daily allocations and product returns, double checking all orders and replenishment to assure accuracy, and maintaining at least minimum production and accuracy standards as set by her department. (*See* Exhibit C, Job Description).

Maui Jim's offer letter to Adams explained that the first 90 days of employment are an introductory "probationary period," after which new employees' performance is evaluated to determine their continued employment. (*See* Exhibit D, Offer Letter). Within the 90-day probation period, Adams' supervisors had significant concerns about deficiencies in Adams' performance metrics. Adams struggled with meeting Maui Jim's quantity and quality standards during her onboarding and training, and these issues continued following her training. (*See* Exhibit E, 6/24/21 Email). Adams' accuracy in picking the product consistently lagged behind department standards, while the amount of product she picked per hour was similarly substandard throughout her time at the Company.

Adams' supervisor Javier Silva highlighted the performance concerns to Adams during the 30-day check in customary for new hires. To ensure that Adams was provided with the best opportunity for overcoming her shortcomings, Silva had Adams repeat the new hire training again after her one-month progress check-in. Adams also received additional dedicated guidance from her team leads, supervisors, and manager following the check-in, focusing on picking fundamentals like warehouse section numbers, product bin locations, and product SKU numbers. (*See* Exhibit F, 60-day Check-in and Progress Metrics).

Despite the additional training and one-on-one guidance from team leaders, Adams' performance did not significantly improve over the next month. At the 60-day check-in of her probationary period, Adams was still consistently picking the wrong product (mispicks) and failing to meet standards for picking speed. Picking and Replenishment Technicians in her department were expected to pick with 99.89% accuracy to meet minimum quality expectations. Adams failed to meet this standard in ten of the thirteen weeks measured in her 60-day progress recap. (*See* Exhibit F).

To meet her department's picking speed minimum requirements, Adams was expected to pick an average of 165 product pieces an hour. Yet as the 60-day progress recap displays, Adams weekly averages regularly failed to meet even an average of 100 pieces picked an hour, and never met the 165 per hour standard. *Id.* While picking accuracy expectations could not be adjusted because of client expectations, the Company was flexible with Adams' picking speed expectations, adjusting its minimum standards to allow for Adams' continued improvement. Following the 60-

# JacksonLewis

August 5, 2022
Position Statement
Charge No: 440-2022-00105
Page 4

day check in, Adams' expectations were adjusted and she was expected to pick an average of 100 pieces an hour the following week, 110 pieces an hour the next week, 120 pieces an hour the week after that, and then 150 pieces a week in the fourth week following her check-in, which was supposed to be the last week of her probationary period. *Id*. Additionally, Adams was advised that she needed to focus on her mispicks and that she would be allowed two mispicks for the first two weeks, one for the third week and zero in the fourth week. Silva also made clear to Adams that continued failure to meet the outlined expectations could jeopardize her continued employment with the Company. *Id*. Contrary to the allegations in her Charge, Maui Jim did not impose expectations on Adams that made it "harder for her to be a successful employee." Quite the opposite, the Company eased its legitimate and objective standards to allow Adams ample opportunity to display improvement towards meeting its reasonable expectations.

Despite the temporarily reduced expectations and continued coaching, Adams still did not meet either the picking accuracy or picking quantity requirements of her role by the end of her 90-day probationary period a month later. In the month of July, she averaged 126 product pieces picked an hour. (*See* Exhibit G, 90-day Probationary Period Review). This failed to meet not only the standard expectation of 165 pieces per hour, but also the reduced expectation of 150 pieces an hour outlined in her 60-day check in. In the final month of her probation, she also picked product with 99.77% accuracy, again below the 99.89% minimum accuracy expectation. *Id*. Picking accuracy is especially crucial to Maui Jim's business, as it impacts customers receiving the correct product ordered. Due to her inability to meet even the basic picking requirements, Adams could not progress into additional training on other elements required of her role, such as processing returned inventory, packing, and shipping. *Id*. Yet even with weekly meetings and consistent feedback, Adams could not meet Maui Jim's minimum expectations. Adams received an overall manager evaluation of "Unsatisfactory" at the end of her probationary period. Given the poor rating, Adams was subject to be terminated, but the Company instead extended her probationary period for another 30 days in hopes that Adams would progress and achieve minimum competency.

Unfortunately, even after the additional 30 days, Adams was not meeting the expectations of her role. Thus, on October 4, 2021, Maui Jim decided to terminate her employment. (*See* Exhibit H, Termination Letter).

## II.   LEGAL ANALYSIS

*Adams Cannot Demonstrate that Maui Jim Discriminated Against Her Because of Her Race*

To establish discrimination under Title VII, a charging party must show that her protected characteristic "caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). The most common method for doing so is the *McDonnell-Douglas* test, in which Adams first must show that: (1) she is a member of a protected class; (2)

# JacksonLewis

August 5, 2022
Position Statement
Charge No: 440-2022-00105
Page 5

she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action, and (4) her employer treated similarly situated employees outside the class more favorably. *Simpson v. Franciscan All., Inc.,* 827 F.3d 656, 661 (7th Cir. 2016). If she can establish this *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. At that point, the burden then shifts back to the employee to prove that the reason offered by the employer is a pretext for intentional discrimination. *Id.*

Adams cannot establish a *prima facie* case for her discrimination claim, as she was not meeting Maui Jim's legitimate business expectations. As evidenced by her measured performance metrics, Adams never achieved her department's expectations of picking 165 product pieces an hour at 99.89% minimum accuracy. These expectations were purely objective and applied uniformly to Picking and Replenishment Technicians throughout her department. Maui Jim terminated Adams because of her failure to meet legitimate expectations, not because of her race. Adams offers no evidence or explanation to the contrary.

Additionally, Adams does not and cannot identify any similarly situated, non-Black employees who were treated better than her. In fact, Rachel Goodin, a White female employee, was not selected to return from furlough about a year before Adams' termination because of similar performance concerns.

Finally, Adams offers no reason to believe that Maui Jim's legitimate reason for termination is pretextual or that any person involved in the decision to terminate her was biased against Black employees.

No cause exists to support any of Adams' claims, and thus her charge should be dismissed in its entirety. If you have any questions, please feel free to contact us.

Very truly yours,
JACKSON LEWIS P.C.

*/s/ Nadine C. Abrahams*

Nadine C. Abrahams

Attachments

cc: Thanin O. Stewart

5

**Cc:**
Rhonda Bessert
1 ALOHA LN
Peoria, IL 61615

Thanin Stewart
Jackson Lewis P.C.
150 N MICHIGAN AVE STE 2500
Chicago, IL 60601

Walter Hester
Maui Jim
1 ALOHA LN
PEORIA, IL 61615

Nadine Abrahams
Jackson Lewis
150 N MICHIGAN AVE STE 2500
Chicago, IL 60601

Please retain this notice for your records.



October 4, 2021

**Private and confidential**

Juaton Adams
1421 W Candlelight Ct
#201
Peoria, IL 61614

Aloha Juaton:

This letter is to confirm that your last day of employment with Maui Jim is Monday, October 4, 2021. Throughout your 90 day probationary period, there were many concerns with your performance not meeting the company's expectations around quality and quantity. Multiple trainings and coaching sessions were conducted by your Supervisors and Leads in an effort to improve your performance. In September 2021, your new hire probationary period was extended by 30 days due to not meeting the KIPs of quality and quantity expected in your role as Picking Technician. Despite being closely managed and on an extension of probation for the last 30 days, your performance has failed to improve to an acceptable level, and you are still not meeting the expectations required in this position.

Your final pay check will be processed in accordance with the company's normal payroll schedule on October 15, 2021. You final pay will include your base salary for your service through today, October 4, 2021, plus any accrued and unused vacation time.

Your benefits will all cease as of midnight tonight. Information regarding the continuation of medical coverage through COBRA will be sent to you in the mail from PBA, our insurance company. Additional information regarding the distribution of your 401k, stock option purchase information, and the continuation or your life insurance benefits is enclosed.

Juaton, I wish you the best with your future. Please feel free to contact me with any questions you may have at 309-589-6031.


Mahalo,



Mary Brenneman
Human Resources Business Partner

# Juaton Adams VS Maui Jim

The process of getting hired at Maui Jim was rather odd.  At first, I had been turned down the offer for the job I had originally applied for. There was a guy who I was told interviewed better than I did, so he was offered the job.  I applied for a job in a different department within the company but I got a call back, with a job offer for the department I had interviewed with prior to filling out the new application.  A full-time position for Pick/Replenishment was about to come open.  I was offered the job and accepted it.

I started this position on May 3rd, 2021.  During the first week I had orientation and met with Human Resources.  On the first day of orientation I had lunch with my manager and supervisor per the orientation schedule.  By the end of the week, when orientation was over neither my manager nor supervisor had come to get me like they were supposed to.  For a while I was left in the room, not knowing what to do.  Since management failed to get me to where I needed to be, a worker in a different department had to remind them I was still there.

During the first three to four weeks of my training, I hardly ever saw my manager, my supervisor, or the team leaders.  There was a training schedule that we were supposed to follow but that never really happened.  An attempt to do so started about after the fourth week I had been employed.  We had two team leaders, one for the first shift and the other for the second shift.  That had soon changed because the leader for the shift that I was working was going to be working the first shift, along with the other leader.  I was getting a lot of help from a new part-time employee who had gotten hired about a week before I did.

An employee that put a two weeks' notice in informed me that I'm the replacement for the full-time position.

This same employee along with another one of our co-workers, had expressed to me how they noticed how Javier, the supervisor treated me differently than everyone else. They spoke to Susan, the manager, about it because they said that it wasn't right. What has stuck with me to this day is when this employee saw me at the company party, the first thing this employee said to me was " is Javier still treating you like shit" I was feeling uncomfortable with my supervisor and manager and although I hadn't expressed that to any of my co-workers at that time, it didn't take them long to notice it themselves. Not only was I not supervised and trained properly for the first four to five weeks of my employment, I was not checked in on about the status of my progress or given any feedback or documents on it. I had learned that the management team was supposed to give me weekly reviews and documentation on how I was doing. Up until after my first thirty days management approached me and then that's when I finally was told that I hadn't been meeting the expectations.

During the first couple of weeks being employed at Maui Jim, I had noticed that my supervisor and team leads were working more with the employee that I mentioned before, that started about a week before but was hired in as a part-time employee. This is one that I got a lot of help from. When I was hired, there was only one full-time position that needed to be filled, and that was the one I was hired for. I would soon learn that even though I filled the full-time position, my fellow co-worker would be full-time as well, even though the employee was hired on as part-time.

Some time after my first thirty days, it was agreed upon between my manager and I to go through the new hire training again. Even

during that time I was only shown the minimum or what I had learned from some of my co-workers.  I worked the second shift and at this point both of the team leaders were working the first shift.  I didn't get to spend that much time working with them since both leave earlier than me.  Javier, the supervisor for my shift, was new to the department.  There were times I went to him for help, and he didn't have the answers.  Susan was the manager, and she worked the day shift as well.  Most of the time I would see her was when we were in the meetings, sometimes along with Javier.  Again I had to depend on my co-workers, whom were non-management, for help when I needed it.  When I did get a chance to work with a team leader, it was for a very short period.  I remember when one of the team leaders was showing me some things, this team leader had expressed to me that although I may have been shown some of the tasks already, that I had to shown them again to "cover our own ass".

Getting to go through new hire training again sounded like a great plan to help me be successful at Maui Jim but it was never meant to set me up for success.  For the majority of the time, I was only allowed to pick from the blue bins and not the red bins.  Most of the time the red bins made it easier for someone to reach their hourly goal.   They had the most products in them versus the blue bins.  When you get to pick an event you get so much product that you can reach your daily goal within an hour.  Neither management nor my team leaders informed me or trained me on that.  My co-workers knew the position I was in with my job, so it was they who let me know about the events and showed me how to pick them and how picking the events would help my situation.  I started to feel secure about my job after I learned that strategy.  I would check in with some of the packers about the events I had picked.  According to them I was doing good and there were no complaints about the ones I had picked.  It came to a point that when I

knew that a packer had grabbed my event or bin to pack, I checked in with them regularly about them.  Shortly after I learned how to pick an event, I was told by a co-worker that one of the team leaders said that they wouldn't count anymore, so that wouldn't help me like it had helped my co-workers a few weeks back.  A lot of the times I was informed by some of the packers that I did good and didn't have mis picks.  Some of them would share with me some of the co-workers on my team who mis picked regularly, all the time.  So, when they learned about the expectations put on me, they pointed out that it was unfair and how others don't have that expectation put on them.

Another barrier I faced and that kept me from meeting the expectation for speed was the fact that the aisles were very small and either overcrowded with employees or the carts that the bins were on.  Not only was this an issue for me but my co-workers faced this issue also.  It seems as if the barrier was taken into consideration for them but not so much as for me.  I was the only employee feeling the pressure and anxiety from the expectations that were placed on me of having to only have one mis pick.  Although all the orders that were in the mis pick bins didn't all belong to me, I was the only one being penalized and in the position of losing their job.  Thinking about makes me feel awful.  It felt like I was being forced to be perfect, in a setting with a lot of unperfect people but I'm the only one suffering and being punished.  Because they couldn't mold me into what they consider to be a valuable employee, eventually I was terminated.

Just as a co-worker had observed and expressed to me, that it was never their intention to set me up for success as a Maui Jim employee, I felt exactly the same way.  I believe that my co-worker, that was originally hired part time, but got offered full-time shortly after she started a week before me got a chance to impress my managers and supervisors, before I got out of orientation and made it to the floor. I

believe that they lost interest in me, so I was subject to neglect of being trained properly. Is this the reason that my manager and supervisor forgot about me in orientation, and left me there alone when I was supposed to be on the production floor with everyone else?  Could making this employee that originally was hired part-time jeopardize my full-time position when there was only one full-time position that needed to be filled?  Was the department on a budget, and could it afford to hire two full-time employees?  Is this the reason why my training was neglected, and I hardly had any contact with my manager, my supervisor, or the team leaders the first 4 to 5 weeks of my employment?  Is this why when I did spend a little time with the team leader, the comment was made about having to "covering our ass" was referring too?  I also question that if the re-hire training was a genuine suggestion to help me be successful or if it was just put in place as a cover up to "cover our ass" as the team leader had quoted?  Was re-hire training also put into place because of the employees that witnessed how I was being treated complained to management about it?

A lot of the way I was treated doesn't make sense to me, but I think if management at Maui Jim genuinely wanted to see be successful, my first four to five weeks of being employed, I would have been properly trained.  Also, if they genuinely wanted to see me be successful why were barriers placed on me unlike some of my co-workers that had made some of the same mistakes I made.  I would also like to add, why hadn't I been offered the chance to work in a department that had easier tasks?  That was the solution for others that were struggling in a role that they couldn't meet expectations for. The only solution they had for me was to fire me.

I had talked to Mary Breneman about working in a different department.  I was informed by her that I can put in an application for a

job that I'm interested in, and I was told that I would have to go through the interviewing process again if I became a candidate. Before I could even put the application in, I was fired, and she made it seem as if she didn't know that that was going to happen. I believe that they all knew what my fate at Maui Jim would be before I got to the production floor. I have a great spirit and I'm capable of amazing things. It was the unjust discriminatory behaviors and actions of the managing team that made it impossible for me to be successful at Maui Jim. I was never really given a real chance!